# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

GARDNER DENVER, INC,

        **Plaintiff,**

        **v.**                             **Case No. 20-CV-895**

ACCURATE AIR ENGINEERING, INC,
AIR PACIFIC COMPRESSORS, INC,
  *d/b/a Compressed Air of California,* **and**
JOHN LAGUE,

        **Defendants.**

## DECISION AND ORDER

Plaintiff Gardner Denver, Inc. has filed this diversity action alleging various contract and tort claims against Defendants Accurate Air Engineering, Inc., Air Pacific Compressors, Inc., and John Lague. The defendants have moved to dismiss the complaint for lack of personal jurisdiction and for failure to state a claim upon which relief can be granted. Alternatively, the defendants seek to transfer the action to the Central District of California. All parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). (*See* ECF Nos. 5, 20.) The motions are fully briefed and ready for resolution.

## BACKGROUND

Gardner Denver, Inc., is a Delaware corporation with its principal place of business in Milwaukee that manufactures industrial air compressors and other flow control technology. (*See* ECF No. 1, ¶¶ 3, 10.) It sells its products in the United States through a distribution network. (*Id.*, ¶ 10.)

In 1994 Gardner Denver entered into a distributor agreement with Accurate Air Engineering, Inc., a California corporation. (*Id.*, ¶¶ 4, 13 (citing ECF No. 1-1 at 1-10).) Pursuant to the agreement, Accurate Air agreed to promote, sell, and service Gardner Denver products in certain Southern California counties. (ECF No. 1, ¶ 13; ECF No. 1-1 at 2, 10.) The agreement was to remain in effect "until terminated as provided in Section 5." (ECF No. 1, ¶ 13; ECF No. 1-1 at 2.) Section 5 provided that the agreement could be terminated upon mutual consent, upon 90-days' notice of termination by either party, or if Gardner Denver gave one day's notice based on certain events, including "ceas[ing] to conduct its operations in the normal course of business." (ECF No. 1, ¶¶ 14-15; ECF No. 1-1 at 5.) The agreement also contained a confidentiality provision and an exclusive-dealing provision. (ECF No. 1, ¶¶ 16-17; ECF No. 1-1 at 2.) John Lague signed the agreement as Accurate Air's president. (ECF No. 1, ¶ 12; ECF No. 1-1 at 6.)

Twenty-two years later, in 2016, Gardner Denver entered into a similar agreement with Air Pacific Compressors, Inc. (doing business as Compressed Air of California), a "sister company" of Accurate Air. (ECF No. 1, ¶¶ 19, 20 (citing ECF No. 1-1 at 11-25).)

2

Like Accurate Air, Air Pacific agreed to promote, sell, and service Gardner Denver products in certain Southern California counties. (ECF No. 1, ¶ 19; ECF No. 1-1 at 12, 14-16, 20.) The Air Pacific Agreement also provided that it "shall continue in effect until terminated by either Party as provided below," including at any time upon mutual written consent, upon 90-days' written notice of termination by either party, immediately upon written notice by either party that the other party failed to timely remedy its default or material breach of the agreement, or immediately if Gardner Denver gave written notice based on certain events. (ECF No. 1, ¶¶ 21-22; ECF No. 1-1 at 13.) Like the Accurate Air Agreement, the Air Pacific Agreement contained a confidentiality provision and an exclusive-dealing provision. (ECF No. 1-1 at 14, 17.) However, unlike the Accurate Air Agreement, the Air Pacific Agreement contained a mandatory forum selection clause specifying that "[a]ny legal action or proceeding arising out of or relating to this Agreement must be brought in the courts of the Eastern District of Wisconsin, sitting in Milwaukee, Wisconsin." (*Id.* at 17.) Lague signed the Air Pacific Agreement as that company's president, too. (*Id.* at 19; ECF No. 1, ¶ 19.)

Throughout 2018 and 2019 representatives of Gardner Denver discussed with Accurate Air and Air Pacific a potential acquisition of some or all of both entities' assets. (ECF No. 1, ¶ 41.) Those discussions stalled, however, "as certain issues arose that prevented both parties from moving forward with the transaction." (*Id.*) "Gardner

3

Denver representatives expected that discussions would resume concerning this transaction once those issues were resolved." (*Id.*)

After their discussions with Gardner Denver stalled, on October 17, 2019, Accurate Air and Air Pacific informed Gardner Denver that they were terminating their respective distributor agreements. (*Id.*, ¶ 42 (citing ECF No. 1-1 at 26-29).) Specifically, in nearly identical letters addressed to Gardner Denver's Illinois office, Lague indicated that both companies had ceased all business operations and were liquidating their assets effective immediately "due to personal family reasons." (ECF No. 1-1 at 27, 29.) Lague further indicated that the companies would "discontinue the use of all Gardner Denver trademarks, etc., and destroy all marketing materials and other confidential information." (*Id.*) In an email attaching the letters, Accurate Air's director of sales informed Gardner Denver that Lague and his family had "decided to sell all the assets of [Accurate Air] and [Air Pacific] to Atlas Copco," one of Gardner Denver's chief competitors. (*See* ECF No. 11-1; *see also* ECF No. 1, ¶ 27.)

Atlas Copco announced the acquisition of Accurate Air and Air Pacific in a press release dated October 18, 2019. (ECF No. 1, ¶ 28.) According to Atlas Copco's website, Accurate Air has been a "Factory-Direct Branch of Atlas Copco Compressors" since October 2019. (*Id.*, ¶ 29.) The website contained a video celebrating the acquisition. (*See id.*) Since the acquisition was finalized, Accurate Air and Air Pacific have marketed, sold, and distributed Atlas Copco's air compressors and other flow control technology

equipment and related parts throughout California in direct competition with Gardner Denver. (*See id.*, ¶ 30.)

In February 2020 Gardner Denver sued Accurate Air, Air Pacific, and Lague in California state court for breach of contract, breach of the covenant of good faith and fair dealing, and fraud. (*See* ECF No. 12-1.) A few months later, however, Gardner Denver voluntarily dismissed that state-court action. (*See* ECF No. 12-4; ECF No. 16.)

Shortly after dismissing the California lawsuit, Gardner Denver refiled the action in the Eastern District of Wisconsin. (*See* ECF No. 1.) The complaint asserts six causes of action: (1) breach of contract against Accurate Air; (2) breach of contract against Air Pacific; (3) breach of the covenant of good faith and fair dealing against Accurate Air and Air Pacific; (4) intentional misrepresentation against Accurate Air, Air Pacific, and Lague; (5) concealment against Accurate Air, Air Pacific, and Lague; and (6) attorney fees against Accurate Air, Air Pacific, and Lague. (*See id.*, ¶¶ 51-91.)

The defendants have filed a motion to dismiss pursuant to Rules 12(b)(2), 12(b)(6), and 19 of the Federal Rules of Civil Procedure or, alternatively, to strike pursuant to Rule 12(f). (ECF No. 7.) They have also filed a motion to transfer venue pursuant to 28 U.S.C. § 1404(a). (ECF No. 9.) Gardner Denver has moved for oral argument on the motions. (ECF No. 18.)

## DISCUSSION

The defendants move to dismiss all claims against Accurate Air and Lague for lack of personal jurisdiction and to dismiss the complaint in its entirety for failure to join an indispensable party and for failure to state a claim upon which relief can be granted. Alternatively, the defendants move to strike certain allegations contained in the complaint and to transfer this action to the Central District of California. Moreover, Gardner Denver moves for oral argument on the defendants' motions.

## I.    Motion to dismiss under Fed. R. Civ. P. 12(b)(2)

"Rule 12(b)(2) calls for dismissal where [the court] lack[s] personal jurisdiction over a party." *Playboy Enters. Int'l, Inc. v. Smartitan (Singapore) Pte., Ltd.*, 804 F. Supp. 2d 730, 733 (N.D. Ill. 2011) (citing Fed. R. Civ. P. 12(b)(2)). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(2) based solely on the submission of written materials, "the plaintiff need only establish a *prima facie* case of personal jurisdiction." *Guaranteed Rate, Inc. v. Conn*, 264 F. Supp. 3d 909, 914 (N.D. Ill. 2017) (citing *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). "In determining whether personal jurisdiction exists, the Court may rely on the complaint, affidavits, deposition testimony, exhibits or other evidence in the record, and the Court will draw all inferences from the record in plaintiff's favor." *Wausau Container Corp. v. Westview Packaging*, Case No. 10-C-630, 2010 U.S. Dist. LEXIS 117223, at *4 (E.D. Wis. Nov. 2, 2010) (citing *Schimpf*

6

*v. Gerald, Inc.*, 2 F. Supp. 2d 1150, 1160 (E.D. Wis. 1998); *PKWare, Inc. v. Meade*, 79 F. Supp. 2d 1007, 1011 (E.D. Wis. 2000)).

In this diversity action the court has personal jurisdiction over the parties to the extent that a Wisconsin court could exercise such jurisdiction. *See Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002) ("A federal court sitting in diversity must rely on the law of personal jurisdiction that governs the courts of general jurisdiction in the state where the court is sitting."). "Under Wisconsin law, a court can exercise personal jurisdiction over a party based on any of the grounds listed in Wisconsin's long-arm statute, Wis. Stat. §§ 801.05, 801.04(2), or by consent." *H-D Mich., LLC v. Hellenic Duty Free Shops S.A.*, Case No. 11-CV-00742, 2011 U.S. Dist. LEXIS 129724, at *3 (E.D. Wis. Nov. 7, 2011) (citing *Kohler Co. v. Wixen*, , 555 N.W.2d 640, 644 (Wis. Ct. App. 1996)). Gardner Denver alleges that the Eastern District of Wisconsin has personal jurisdiction over the defendants based on consent. (*See* ECF No. 1, ¶ 8.)

Consent may be expressed or implied. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985) ("[B]ecause the personal jurisdiction requirement is a waivable right, there are a 'variety of legal arrangements' by which a litigant may give 'express or implied consent to the personal jurisdiction of the court.'") (quoting *Ins. Corp. of Ir. v. Compagnie Des Bauxites De Guinee*, 456 U.S. 694, 703 (1982)). "For example, . . . parties frequently stipulate in advance to submit their controversies for resolution within a particular jurisdiction. Where such forum-selection provisions have been obtained through freely

7

negotiated agreements and are not unreasonable and unjust, their enforcement does not offend due process." *Burger King*, 471 U.S. at 472 n.14 (citations and quotation marks omitted); *see also Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1292 n.4 (7th Cir. 1989) ("Obviously, a valid forum-selection clause, even standing alone, can confer personal jurisdiction.") (citing *Burger King*, 471 U.S. at 472 n.14).

Gardner Denver argues that all three defendants consented to personal jurisdiction in Wisconsin by virtue of § 3.04 of the Air Pacific distributor agreement (*see* ECF No. 15 at 15-19[1]), which specifies that "[a]ny legal action or proceeding arising out of or relating to this Agreement must be brought in the courts of the Eastern District of Wisconsin[]" (ECF No. 1-1 at 17). The defendants do not dispute that § 3.04 is enforceable and applicable with respect to Gardner Denver's claims against Air Pacific; thus, they concede that Air Pacific expressly consented to jurisdiction in this court. (*See* ECF No. 8 at 8.) But the defendants argue that § 3.04 of the Air Pacific Agreement is not binding on Accurate Air or Lague because those two defendants were not parties to that Agreement and because Lague signed the Agreement only in his capacity as Air Pacific's president. (*See* ECF No. 8 at 12.) Gardner Denver responds that Accurate Air and Lague are so closely related to Air Pacific and its dispute with Gardner Denver that is was foreseeable they'd be bound by § 3.04 of the Air Pacific Agreement. (*See* ECF No. 15 at 15-19.)

---

[1] Citations to the parties' briefs are to the pagination provided by CM/ECF.

The Court of Appeals for the Seventh Circuit has permitted forum selection clauses to be enforced against non-signatories to an agreement in certain circumstances. The court first mentioned the "closely related" test in *Hugel v. Corporation of Lloyd's*, 999 F.2d 206 (7th Cir. 1993), stating that, "[i]n order to bind a non-party to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound." *Id.* at 209 (citing *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988); *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190, 203 (3d Cir. 1983)). In *Adams v. Raintree Vacation Exchange, LLC*, 702 F.3d 436 (7th Cir. 2012), the Seventh Circuit explained that the "vague" closely related standard "can be decomposed into two reasonably precise principles": "affiliation" and "mutuality." *Id.* at 439.

Affiliation refers to common ownership or control. *See Adams,* 702 F.3d at 439–42 ("A forum selection clause is sometimes enforced by or against a company that is under common ownership (for example as parent and subsidiary) with—that is, an affiliate of— a party to a contract containing the clause"). Mutuality allows a signatory plaintiff to enforce a forum selection clause against a non-signatory defendant if the non-signatory defendant would be able to invoke the clause against the plaintiff—in other words, what's good for the goose is good for the gander. *See id.* at 442-43. A plaintiff relying on the closely related doctrine to enforce a forum selection clause on a non-signatory defendant does not need to establish both affiliation and mutuality; either one is

9

sufficient. *See Stifel v. Lac du Flambeau Band of Lake Superior Chippewa Indians*, 807 F.3d 184, 212 (7th Cir. 2015) (citing *Adams*, 702 F.3d at 439).

The defendants appear to concede that Accurate Air, Air Pacific and Lague are closely related to one another and that Accurate Air and Lague are closely related to Air Pacific's contractual dispute with Gardner Denver. (*See* ECF No. 23 at 8-12.) They do not disclaim the affiliation between Accurate Air, Air Pacific, and Lague. Nor do they dispute that Accurate Air and Lague could have enforced the forum selection clause found in § 3.04 of the Air Pacific Agreement on Gardner Denver if, for example, the suit had been filed elsewhere and the defendants preferred to be in Wisconsin.

Nevertheless, the defendants maintain that Gardner Denver's reliance on *Adams* (and like cases) is misplaced because the issue in that case was venue, not jurisdiction. (*See* ECF No. 23 at 6.) According to the defendants, this distinction is significant, as "venue is primarily a matter of choosing a convenient forum and implicates no constitutional principle . . . , while due process considerations are present in all personal jurisdiction inquiries." (*Id.* (quoting *Guaranteed Rate*, 264 F. Supp. 3d at 924).) Thus, in the defendants' view, cases like *Synthes, Inc. v. Emerge Medical, Inc.*, 887 F. Supp. 2d 598 (E.D. Pa. 2012), *St. Jude Medical, S.C. v. Biosence Webster, Inc.*, No. 12-621 ADM/AJB, 2012 U.S. Dist. LEXIS 62534 (D. Minn. May 4, 2012), and *Employers Insurance of Wausau v. Certain London Market Companies*, No. 97-C-0409-C, 1997 U.S. Dist. LEXIS 22027 (W.D. Wis. Oct. 27, 1997)—cases relied upon by Gardner Denver that apply the closely related test in the personal

10

jurisdiction context—are not persuasive because those courts "fail[ed] to even address due process." (ECF No. 23 at 7.) The defendants contend that, "[a]bsent a finding of an implied waiver of the objection to jurisdiction, the 'closely related' test should not be applied to find jurisdiction without the requisite 'minimum contacts' to allay due process concerns." (*Id.* at 8.)

The defendants' position has some support in the caselaw. In *Guaranteed Rate, Inc. v. Conn*, 264 F. Supp. 3d 909 (N.D. Ill. 2017), a residential mortgage company sued several of its former employees and their new employer for conspiracy to breach fiduciary duties. *Id.* at 912-14. Two of the defendants moved to dismiss the claims against them for lack of personal jurisdiction. *Id.* at 912. In opposing that motion the plaintiff argued that the court could assert personal jurisdiction over those defendants based on forum selection clauses in the compensation agreements of the other defendants. *Id.* at 924.

The court granted the Rule 12(b)(2) motion to dismiss, finding that the non-signatory defendants were "not subject to personal jurisdiction in Illinois based on the forum selection clauses in the compensation agreements to which they are not parties." *Id.* at 928. In reaching that conclusion, the court determined that *Adams* did not require a different outcome "[b]ecause *Adams* is a venue case"; "the issue . . . of whether a defendant may be found to have waived objection to personal jurisdiction based on a forum selection clause in a contract to which it is not a party is beyond the scope of what was contemplated by the Seventh Circuit in that case." *Id.* at 925.

11

The court also declined to follow *Synthes* and cases like it because "they fail to recognize the due process implications of their holdings." *Id.* The court explained that, while due process considerations may be satisfied based on a forum selection clause based on consent, only the parties to the agreement provide express consent. *Id.* at 925-26 (citing *Burger King*, 471 U.S. at 472 n.14). "Insofar as the 'closely related' nonsignatory is concerned, those courts are relying on an implied waiver." *Guaranteed Rate*, 264 F. Supp. 3d at 926. The court expressed "serious concerns over whether it would be 'reasonable' and 'just' to apply a close relationship test that relies on foreseeability to find implied consent to personal jurisdiction." *Id.* (quoting *Burger King*, 471 U.S. at 472 n.14) (certain punctuation marks omitted). As a result, the court "decline[d] to apply the closely-related party doctrine to bind an out-of-state new employer to [a particular forum] based on a contract to which it was not a party and where it did not voluntarily join the contracting employee in any litigation." *Guaranteed Rate*, 264 F. Supp. 3d at 926 (quoting *Medtronic, Inc. v. Amanda Ernst & Nevro Corp.*, 182 F. Supp. 3d 925, 933-34 (D. Minn. 2016)).

The *Guaranteed Rate* court noted that its decision "did not call into question the holdings in *Adams* and similar cases which . . . hold that nonsignatories may be bound by forum selection clauses, at least as far as venue is concerned, based on . . . (1) corporate affiliation; (2) mutuality; and (3) other specified circumstances not present here." 264 F. Supp. 3d at 927 (citations omitted). Those cases were inapplicable "because the record contain[ed] no evidence of corporate affiliation, mutuality, or any of the other types of

12

relationships discussed in the case law." *Id.* Thus, the court limited its holding "to personal jurisdiction and the 'closely related' concept based on foreseeability that [the plaintiff] argue[d] should be applied in a situation where no formal legal relationship exists." *Id.* at 927-28.

Several other courts have expressed similar reservations about applying the closely related test in the jurisdictional context. *See, e.g.*, *Playboy Enters.*, 804 F. Supp. 2d at 736-37 ("Playboy is attempting to utilize a forum selection clause to obtain personal jurisdiction over a non-signatory defendant—namely, a director of a corporation—and bind him by the forum selection clause. To adopt Playboy's argument would impermissibly allow a plaintiff to establish personal jurisdiction over directors and shareholders of a corporation simply by alleging that they were closely related to the dispute arising from the agreement."); *Truinject Corp. v. Nestle Sking Health, S.A.*, No. 19-592-LPS-JLH, 2019 U.S. Dist. LEXIS 215313, at *28-29 (D. Del. Dec. 13, 2019) ("I have serious questions about the constitutionality of using the 'closely related' test to exercise personal jurisdiction over a non-signatory to a contract with a forum selection clause."); *Central Transp. Servs., Inc. v. Cole*, No. 13-1295, 2013 U.S. Dist. LEXIS 161384, at *13-14 (D. Kan. Nov. 13, 2013) ("Assuming that a non-signatory can sometimes be bound by a forum selection clause that it did not agree to, the court nevertheless concludes it would violate due process to exercise personal jurisdiction over Brady in Kansas based solely upon the forum selection clause in the Coles' agreement with CTS.").

13

Still, other courts have used the closely related test to find jurisdiction over non-signatory defendants without offending due process. *See, e.g., Cajun Glob. LLC v. Swati Enters., Inc.*, 283 F. Supp. 3d 1325, 1331 (N.D. Ga. 2017) (denying motion to dismiss for lack of personal jurisdiction because non-signatory defendant was closely related to a defendant who signed an agreement containing a forum selection clause); *Sabre Int'l Sec. v. Torres Advanced Enter. Solutions, LLC*, 60 F. Supp. 3d 21, 33-36 (D.D.C. 2014) (same); *Ultratech, Inc. v. Ensure NanoTech (Beijing), Inc.*, 108 F. Supp. 3d 816, 822-23 (N.D. Cal. 2015) (same); *Synthes*, 887 F. Supp. 2d at 606-12 (same); *LaRoss Partners, LLC v. Contact 911 Inc.*, 874 F. Supp. 2d 147, 159-61 (E.D.N.Y. 2012) (same); *Axxon Int'l, LLC v. GC Equip., LLC*, No. 3:17-CV-429, 2018 U.S. Dist. LEXIS 112761, at *25-27 (W.D.N.C. July 6, 2018) (same); *H.H. Franchising Sys., Inc. v. Brooker-Gardner*, No. 1:14-CV-651, 2015 U.S. Dist. LEXIS 94827, at *7-16 (S.D. Ohio July 21, 2015) (same); *Emp'rs Ins. of Wausau*, 1997 U.S. Dist. LEXIS 22027, at *16-23 (same).

With these principles in mind, the court finds that neither Accurate Air nor Lague have consented to personal jurisdiction in the Eastern District of Wisconsin. It is undisputed that Accurate Air was not a party to the Air Pacific distributor agreement. Thus, it cannot be said that Accurate Air expressly consented to jurisdiction in Wisconsin by virtue of § 3.04 of that agreement. *See Guaranteed Rate*, 264 F. Supp. 3d at 925-26 (explaining that "only the actual contracting parties [can] expressly agree[] to [a] forum selection clause[]"); *see also Burger King*, 471 U.S. at 472 n.14 (requiring forum selection

14

clauses to be the product of "freely negotiated agreements" for enforcement to not "offend due process"); *Truinject Corp.*, 2019 U.S. Dist. LEXIS 215313, at *29 (noting that "the rationale underlying [the express consent] rule is absent in cases in which the defendant is not even a party to the agreement"); *Cent. Trans. Servs.*, 2013 U.S. Dist. LEXIS 161384, at *11 (noting that the express consent rule "was adopted for signatories who freely negotiate and adopt an agreement").

Nor did Accurate Air implicitly consent to jurisdiction in Wisconsin based solely on its allegedly close relationship to Air Pacific. Accurate Air had its own distributor agreement with Gardner Denver, which did *not* contain a forum selection clause. (*See* ECF No. 1-1 at 1-10.) In fact, its agreement predated Air Pacific's agreement by 22 years. At or around the same time Gardner Denver was entering into its agreement with Air Pacific it was negotiating a proposed new distributor agreement with Accurate Air. (ECF No. 25, ¶ 6.) A draft of the new agreement contained a forum selection clause similar to that in the Air Pacific Agreement. (*Id.*) Accurate Air objected to the provision, and it was not included. (*Id.*, ¶¶ 7-9.) Ultimately, Accurate Air and Gardner Denver did not execute a new distributor agreement and continued operating under the 1994 agreement. (*Id.*, ¶ 11.) But the fact that Accurate Air objected to the inclusion of a forum selection clause in its agreement demonstrates that Accurate Air did not intend to waive its objection to personal jurisdiction or venue. It also distinguishes this case from the cases relied upon

15

by Gardner Denver that have extended the application of the closely related test to questions of personal jurisdiction.

Although it's unclear whether the Seventh Circuit would apply the closely related test to find a defendant subject to personal jurisdiction based on a forum selection clause in an agreement it did not sign, finding that Accurate Air did not consent to jurisdiction in Wisconsin is not inconsistent with *Adams*. In explaining the rationale for the closely related test, the Seventh Circuit stated in *Adams*, "Were it not for judicial willingness in appropriate circumstances to enforce forum selection clauses against affiliates of signatories, such clauses often could easily be evaded." 702 F.3d at 441. But we are not here dealing with a corporation shifting business to a related corporation so that it could evade a particular forum. Accurate Air entered into its distributor agreement—one that never contained a forum selection clause—with Gardner Denver more than twenty years before Gardner Denver started doing business with Air Pacific. So whether Accurate Air is considered the parent of Air Pacific or simply its sister, there is no evidence suggesting that the two entities manipulated their corporate structure to avoid the forum selection clause.

Likewise, Gardner Denver does not allege that Accurate Air and Air Pacific were co-conspirators in a scheme to defraud Gardner Denver. *See Adams*, 702 F.3d at 442-43 (finding that "an alleged co-conspirator can invoke [or be bound by] the forum selection clause contained in a contract, signed by his alleged co-conspirator, that created or

16

advanced the conspiracy"). The complaint alleges claims against Accurate Air and Air Pacific for their alleged actions concerning *their respective distributor agreements*. The complaint does not, however, allege that Accurate Air committed any wrongdoings with respect to the Air Pacific Agreement. Thus, these are not the "appropriate circumstances" to enforce a forum selection clause to find personal jurisdiction over a non-signatory defendant.

As for Lague, while he executed the Air Pacific Agreement he did so only in his capacity as officer of the company. In Wisconsin, "personal jurisdiction over the corporation cannot be the sole basis for personal jurisdiction over an officer." *Pavlic v. Woodrum*, 169 Wis. 2d 585, 590, 486 N.W.2d 533 (Ct. App. 1992). Although Lague signed the Air Pacific Agreement as "President" (*see* ECF No. 1-1 at 19), the Agreement does not otherwise mention him, and nothing in the Agreement suggests that he would be personally bound by it. Thus, while Air Pacific is bound by § 3.04 of the Air Pacific Agreement, Lague is not. *See Monco v. Zoltek Corp.*, No. 17 C 6882, 2019 U.S. Dist. LEXIS 31279, at *46-54 (N.D. Ill. Feb 27, 2019) (finding individual defendant not subject to forum selection clause contained in an agreement he signed as corporate representative of co-defendant corporation). To be sure, other courts have found personal jurisdiction in similar circumstances. However, the cases relied upon by Gardner Denver for this principle (*see* ECF No. 15 at 18; ECF No. 31 at 9-10) are not controlling on this court and are not persuasive.

Gardner Denver also argues that Lague is subject to personal jurisdiction in Wisconsin because he knows that Gardner Denver's principle place of business is in this district and because he directed intentional, tortious conduct at Gardner Denver. (*See* ECF No. 15 at 18.) However, Gardner Denver does not cite any authority to support its extraordinary contention that knowing the location of a business partner's headquarters satisfies due process. *See Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("[T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."). Moreover, although the complaint alleges that Lague committed fraud against Gardner Denver, it does not allege that Lague directed this conduct at Wisconsin. In fact, the fraudulent conduct attributed to Lague in the complaint is based on letters he allegedly addressed and sent to Gardner Denver's Illinois office. (*See* ECF No. 1, ¶ 42 (citing ECF No. 1-1 at 26-29. Gardner Denver, therefore, has not established specific jurisdiction over Lague.

Aside from the arguments addressed (and rejected) above, Gardner Denver does not dispute that, absent § 3.04 of the Air Pacific Agreement, this court lacks personal jurisdiction over Accurate Air and Lague. Because Gardner Denver has not attempted to point to any contacts either Accurate Air or Lague has with Wisconsin, its request for limited jurisdiction discovery (*see* ECF No. 15 at 19 n.7) is denied. *See Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, (7th Cir. 2006) (holding

18

that a plaintiff must make out a *prima facie* case for personal jurisdiction before being allowed to conduct discovery). Accordingly, the court will grant the defendants' motion to dismiss all claims against Accurate Air and Lague for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).

## II.    Motion to dismiss under Fed. R. Civ. P. 12(b)(7)[2]

The defendants argue that, if the court lacks personal jurisdiction over Lague, then the entire action must be dismissed because he is an indispensable party. (*See* ECF No. 8 at 19-20.)

Rule 12(b)(7) provides for dismissal for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). "The purpose of Rule 19 is to 'permit joinder of all materially interested parties to a single lawsuit so as to protect interested parties and avoid waste of judicial resources.'" *Askew v. Sheriff of Cook Cty.*, 568 F.3d 632, 634 (7th Cir. 2009) (quoting *Moore v. Ashland Oil, Inc.*, 901 F.2d 1445, 1447 (7th Cir. 1990)). "Dismissal, however, is not the preferred outcome under the Rules." *Askew*, 568 F.3d at 634. "Courts are 'reluctant to dismiss for failure to join where doing so deprives the plaintiff of his choice of federal forum.'" *Id.* (quoting *Davis Cos. v. Emerald Casino Inc.*, 268 F.3d 477, 481 (7th Cir. 2001)).

"Joinder under Rule 19 is a two-step inquiry." *Davis*, 268 F.3d at 481. "First, the court must determine whether a party is one that should be joined if feasible—called, in

---

[2] The defendants' motion and brief cite Fed. R. Civ. P. 19 as the basis for dismissing the complaint for failure to join an indispensable party. (*See* ECF Nos. 7, 8.) However, the proper mechanism for seeking dismissal on those grounds is Fed. R. Civ. P. 12(b)(7).

the old days, a "necessary party."' *Id.* (quoting *Thomas v. United States*, 189 F.3d 662, 666

(7th Cir. 1999)). A person is considered an indispensable party under Rule 19(a) if

> (A) in that person's absence, the court cannot accord complete relief among
> existing parties; or
> (B) that person claims an interest relating to the subject of the action and is
> so situated that disposing of the action in the person's absence may:
>> (i) as a practical matter impair or impede the person's ability to
>> protect the interest; or
>> (ii) leave an existing party subject to a substantial risk of incurring
>> double, multiple, or otherwise inconsistent obligations because of
>> the interest.

Fed. R. Civ. P. 19(a)(1). Second, if an indispensable party required by Rule 19(a) cannot

feasibly be joined, Rule 19(b) requires the court to "determine whether, in equity and

good conscience, the action should proceed among the existing parties or should be

dismissed." Fed. R. Civ. P. 19(b). In making this determination, courts should consider

several factors, including

> (1) the extent to which a judgment rendered in the person's absence might
> prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
>> (A) protective provisions in the judgment;
>> (B) shaping the relief; or
>> (C) other measures;
> (3) whether a judgment rendered in the person's absence would be
> adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were
> dismissed for nonjoinder.

Fed. R. Civ. P. 19(b)(1)-(4).

The defendants argue that Lague is an indispensable party "because his absence

will as a practical matter impair his ability to protect his interest in avoiding a finding

20

that he committed fraud." (*See* ECF No. 23 at 13 (citing Fed. R. Civ. P. 19(a)(1)(B)(i)).) The court disagrees. To the extent Lague has an interest in this lawsuit, his interest is identical to that of Air Pacific, of which he was president and part owner. The defendants have not explained in what way Lague's interest in avoiding a finding that he committed fraud will be inadequately protected by Air Pacific. On that issue he almost certainly will be a witness. *See J.P. Morgan Chase Bank, N.A. v. McDonald*, 760 F.3d 646, 653 (7th Cir. 2014) (finding employees not indispensable parties under Rule 19(a) because their interest was identical to, and could be protected by, that of their employer).

Because Lague is not an indispensable party under Rule 19(a), the court need not consider the Rule 19(b) factors. *See id.* Accordingly, the court will deny the defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(7).

## III.     Motion to transfer venue under 28 U.S.C. § 1404(a)

With the dismissal of Accurate Air and Lague, the defendants contend that Gardner Denver's claims against Air Pacific should be litigated in California, where one action can be brought against all three parties. Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "When deciding whether to transfer a case under § 1404(a), a district court therefore 'must evaluate both the convenience of the parties and various public-interest considerations.'"

21

*In re Ryze Claims Sols., LLC*, 968 F.3d 701, 707-08 (7th Cir. 2020) (quoting *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W.D. Tex.*, 571 U.S. 49, 62 & n.6 (2013)).

The Supreme Court explained in *Atlantic Marine* that the § 1404(a) "calculus changes . . . when the parties' contract contains a valid forum-selection clause." 571 U.S. at 63. In that situation, the court "must deem the private-interest factors to weigh entirely in favor of the preselected forum . . . [and] may consider arguments about public-interest factors only." *Id.* at 64. Public-interest factors include, but are not limited to, "docket congestion and likely speed to trial in the transferor and potential transferee forums, each court's relative familiarity with the relevant law, the respective desirability of resolving controversies in each locale, and the relationship of each community to the controversy." *In re Ryze*, 968 F.3d at 708 (internal quotation marks omitted) (quoting *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010)). "These considerations, however, will 'rarely' outweigh the parties' private interests in enforcing a forum-selection provision." *In re Ryze*, 968 F.3d at 708 (quoting *Atl. Marine*, 571 U.S. at 64). Thus, "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Atl. Marine*, 571 U.S. at 63 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)).[3]

---

[3] Although *Atlantic Marine* involved a motion to transfer *to* the preselected forum over the plaintiff's objection, its principles are still relevant in a case, like this one, involving a motion to transfer a defendant *from* the chosen forum over the plaintiff's objection. *See, e.g., ABC Med. Holdings, Inc. v. Home Med. Supplies, Inc.*, No. 15-2457, 2015 U.S. Dist. LEXIS 135987, at *26 (E.D. Pa. Oct. 6, 2015) (applying *Atlantic Marine* when deciding whether to transfer action from preselected forum pursuant to § 1404(a)).

The defendants concede that the forum selection clause contained in the Air Pacific Agreement is valid and enforceable. As the party seeking to avoid the parties' agreed-upon forum, Air Pacific "bear[s] the burden of showing that public-interest factors overwhelmingly []favor a transfer." *Atl. Marine*, 571 U.S. at 66.

The defendants do not argue that the Central District of California is the better forum based on docket congestion or likely speed to trial. Thus, the first public-interest factor does not weigh in favor of transfer.

As for the second public-interest factor, each court's relative familiarity with the relevant law, the choice-of-law provision contained in the Air Pacific Agreement dictates that most of Gardner Denver's claims against Air Pacific are governed by Delaware law. (*See* ECF No. 1-1 at 18.) The defendants do not argue that the Central District of California is more adept at applying Delaware law than this court. (*See* ECF No. 10 at 15.) Instead, they focus on Gardner Denver's allegations that Air Pacific breached the Agreement and the covenant of good faith and fair dealing by selling "Atlas Copco's competing products in violation of a contractual noncompete provision." (*See id.* at 14 (citing ECF No. 1, ¶¶ 64, 70-71).) According to the defendants, these allegations are "in direct conflict with California public policy" concerning restrictive covenants, and the Central District of California is more familiar with California law enforcing this policy. (*See id.* at 14-15.)

That might be true. But "federal judges routinely apply the law of a State other than the State in which they sit." *In re Ryze*, 968 F.3d at 709 (quoting *Atl. Marine*, 571 U.S.

23

at 67). Moreover, this issue represents only a sliver of Gardner Denver's claims against Air Pacific and likely is moot for reasons explained later in this decision. Thus, the second public-interest factor also does not weigh in favor of transfer.

The third public-interest factor requires the court to consider the respective desirability of resolving this dispute in each locale. The defendants argue that, because this court lacks personal jurisdiction over Accurate Air and Lague, it is more desirable to resolve this dispute in California, where Gardner Denver originally filed suit. (*See* ECF No. 10 at 15.) The defendants contend that keeping Gardner Denver's claims against Air Pacific here while requiring its claims against Accurate Air and Lague to go forward, if at all, in California would waste judicial resources and result in duplicative litigation. (*See id.* at 15-17; ECF No. 22 at 10-13.) In the defendants' view, the public interest strongly favors resolving this dispute in a single forum.

The defendants' concerns are overstated for two reasons. First, while possible, it is not certain that denying the defendants' motion to transfer would result in two separate lawsuits, one here and the other in California. If the motion to transfer is denied, Gardner Denver may choose to file a new lawsuit against Accurate Air and Lague in California while it continues to litigate its claims against Air Pacific here. But Gardner Denver could also choose to go forward only with its claims against Air Pacific. Or Gardner Denver could dismiss this action and file a new one against all three defendants in California, like it did initially. Either way, it would be Gardner Denver's decision to make.

24

Second, even if there were two lawsuits, steps could be taken to mitigate the defendants' concerns. For example, the parties could agree to hold one of the cases in abeyance until the other is decided. Or they could carefully manage discovery to eliminate judicial inefficiency. Thus, at best the third public-interest factor only slightly weighs in favor transfer.

Finally, the court agrees with the defendants that California has a greater local interest in this dispute. The defendants all are California residents with no meaningful ties to Wisconsin, and the agreements at issue here involved the distribution of Gardner Denver products in specific Southern California counties. The only connection to Wisconsin is that Gardner Denver moved its headquarters to Wisconsin several years after entering into its agreement with Accurate Air but prior to going into business with Air Pacific. However, the activity underlying Gardner Denver's claims did not occur in Wisconsin. The fourth public-interest factor is the only one that clearly weighs in favor of transfer.

Overall, the court finds that Gardner Denver has not demonstrated that the public-interest factors overwhelmingly favor transfer of its claims against Air Pacific to the Central District of California. No "exceptional" circumstances exist here to override the remaining parties' agreed-upon forum. Accordingly, the court will deny the defendants' motion to transfer venue pursuant to 28 U.S.C. § 1404(a).

25

## IV.    Motion to dismiss under Fed. R. Civ. P. 12(b)(6)

According to Fed. R. Civ. P. 8(a)(2), "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." A motion to dismiss under Fed. R. Civ. P. 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "To survive a motion to dismiss, a complaint must 'state a claim to relief that is plausible on its face.'" *Zemeckis v. Global Credit & Collect. Corp.*, 679 F.3d 632, 634-35 (7th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim satisfies this pleading standard when its factual allegations 'raise a right to relief above the speculative level.'" *Zemeckis*, 679 F.3d at 635 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). When analyzing a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *Johnson v. Enhanced Recovery Co.*, 961 F.3d 975, 980 (7th Cir. 2020) (citing *Heredia v. Capital Mgmt. Servs., L.P.*, 942 F.3d 811, 814 (7th Cir. 2019)).

The defendants move to dismiss each of the claims against Air Pacific, which, according to the terms of the Air Pacific Agreement, are governed by Delaware law. (*See* ECF No. 1-1 at 18.)

26

### A. Breach of contract

The complaint alleges that Air Pacific breached its contractual obligations to Gardner Denver under the Air Pacific Agreement "through its failure to provide a 90-day written notice of termination without cause, its sale of Atlas Copco's competing products and parts throughout its geographical territory during the bargained-for 90-day termination notice period, and its disclosure to Atlas Copco of Gardner Denver's competitively sensitive and proprietary confidential business information." (ECF No. 1, ¶ 64.) The complaint further alleges that, "[a]s a direct and proximate result of [Air Pacific's] breach of contract, Gardner Denver has suffered lost revenues and profits, transition costs, reputational and competitive harm, incidental damages, and other damages in an amount to be fully proven at trial." (*Id.*, ¶ 66.)

The defendants argue that each claim contained within the breach of contract cause of action should be dismissed and that any allegations relating to a dismissed claim should be stricken from the complaint.

### 1. Termination notice

The defendants first argue that Gardner Denver's claim that Air Pacific breached the Agreement by failing to provide 90 days' written notice of termination fails as a matter of law. (*See* ECF No. 8 at 26-27.) According to the defendants, contracts of indefinite duration, like the Agreement, are terminable at will under Delaware law. (*Id.* at 27 (citing

Del. Code Ann. tit. 6, § 2-309).) Thus, in the defendants' view, the termination notice provision contained in the Agreement is unenforceable.

Section 1.04 of the Agreement states that the Agreement "shall continue in effect until terminated by either Party as provided below," including without cause upon 90 days' written notice by either party. (ECF No. 1-1 at 13.) Gardner Denver appears to concede that § 1.04 created a contract of indefinite duration and that under Delaware law such contracts are presumed to be terminable at will. It nevertheless argues that a "reasonable [termination] notice" period is consistent with a terminable-at-will agreement. (ECF No. 15 at 26.)

"Where parties provide by the express language of their contract that it may come to an end at the option of either party, upon notice to the other and without cause, such a stipulation will generally be upheld if fairly entered into." *Paradee Oil Co. v. Phillips Petroleum Co.*, 320 A.2d 769, 773 (Del. Ch. 1974) (citing *Chrysler v. Quimby*, 144 A.2d 885 (Del. 1958)). The defendants do not assert that the termination notice was unfairly entered into. Nor do they cite any authority indicating that Delaware law deems termination notice provisions in terminable-at-will contracts unenforceable. In fact, the statute relied upon by the defendants seems to suggest that parties can agree to a reasonable termination notice period. *See* Del. Code Ann. tit. 6, § 2-309(2) ("Where a contract provides for successive performances but is indefinite in duration it is valid for a reasonable time but *unless otherwise agreed* may be terminated at any time by either party.") (emphasis

28

added); *see also* Del. Code Ann. tit. 6, § 2-309(3) ("Termination of a contract by one party except on the happening of an agreed event requires that reasonable notification be received by the other party and an agreement dispensing with notification is invalid if its operation would be unconscionable.").

Because the defendants have failed to demonstrate that the termination notice period is invalid under Delaware law, the court cannot say that Gardner Denver's termination notice claim fails as a matter of law.

### 2. Exclusive dealing

The defendants argue that Gardner Denver's claim that Air Pacific breached the Agreement by selling Atlas Copco's competing products and parts also fails as a matter of law. (*See* ECF No. 8 at 27-28.) According to the defendants, the alleged sales cannot constitute a breach of the Agreement because the exclusive dealing provision was enforceable only during the term of the Agreement; the sales allegedly occurred *after* Air Pacific terminated the Agreement on October 17, 2019, when it sent Gardner Denver a letter indicating that the company had ceased all business operations. (*Id.* at 27.) The defendants further contend that "California law prohibits the enforcement of post-term noncompete provisions on California residents." (*Id.* at 28.)

Gardner Denver argues that the exclusive dealing provision remained in effect during the 90-day termination notice period and that such provisions are reasonable under California law. (*See* ECF No. 15 at 21-22.)

29

Section 1.06 of the Agreement prohibited Air Pacific from selling or promoting competitors' products "[d]uring the term of the Agreement." (ECF No. 1-1 at 14.) Although the Agreement appears to have been terminable at will, the defendants have not demonstrated that the 90-day termination notice provision was invalid such that Air Pacific could begin selling competitive products immediately upon submitting the termination notice. Because the sales at issue occurred during the 90-day period following the termination notice, California public policy limiting post-termination noncompete provisions does not apply.

The court cannot say that Gardner Denver's exclusive dealing claim fails as a matter of law.

### 3. Disclosure of confidential information

Next, the defendants argue that Gardner Denver's claim that Air Pacific breached the Agreement by disclosing Gardner Denver's confidential information to Atlas Copco "is conclusory and unsupported by allegations of fact." (*See* ECF No. 8 at 28.)

Pursuant to § 3.05 of the Agreement, Air Pacific agreed not to disclose or use any of Gardner Denver's confidential business information except as permitted in the Agreement. (*See* ECF No. 1-1 at 17.) The complaint alleges "[o]n information and belief" that Atlas Copco gained access to Gardner Denver's confidential information either during the due diligence process or after the completed sale of Air Pacific's assets to Atlas Copco. (ECF No. 1, ¶¶ 31-34.) Gardner Denver maintains that the nature and timing of

30

Air Pacific's transaction with Atlas Copco are sufficient to support a reasonable inference that Air Pacific shared Gardner Denver's confidential information with Atlas Copco. (*See* ECF No. 15 at 30-31.)

But those circumstances suggest only that is *possible* that Air Pacific violated § 3.05 of the Agreement. And a mere possibility is not enough to survive a motion to dismiss. Because Gardner Denver has not plausibly alleged that Air Pacific shared Gardner Denver's confidential information with Atlas Copco, this claim must be dismissed.

### 4. Damages claim

The defendants further argue that Gardner Denver's claimed damages resulting from Air Pacific's alleged breach of the Agreement are barred by the terms of the Agreement. (*See* ECF No. 8 at 29-30.) Section 1.05(d) of the Agreement states that "[n]either Party shall be liable to the other for the loss of prospective profits on anticipated sales or expenditures, investment, leases or commitments made prior to termination." (ECF No. 1-1 at 13.) Similarly, § 3.02 states that "[u]nder no circumstances, whether in contract, tort or otherwise, shall either Party be liable for liquidated, special, indirect, incidental, exemplary or consequential damages, expenses or costs, howsoever caused." (*Id.* at 16.)

Although the complaint does allege that, as a result of Air Pacific's breach of the Agreement, "Gardner Denver has suffered lost revenues and profits, transition costs, reputation and competitive harm, incidental damages," it also seeks "other damages in

an amount to be fully proven at trial." (ECF No. 1, ¶ 66.) Thus, not all of Gardner Denver's claimed damages are barred by the Agreement. Gardner Denver has plausibly alleged that it suffered recoverable damages because of Air Pacific's alleged breach of the Agreement.

### 5. Motion to strike pursuant to Fed. R. Civ. P. 12(f)

The defendants move to strike "specific breaches to the extent [the court] grants dismissal only in part." (ECF No. 8 at 30.)

Under Rule 12, a district court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "As a general rule, motions to strike are disfavored and infrequently granted." *Black v. Long Term Disability Ins.*, 373 F. Supp. 2d 897, 904 (E.D. Wis. 2005) (citing *Stabilisierungsfonds Fur Wein v. Kaiser, Stuhl Wind Distribs. Pty., Ltd.*, 647 F.2d 200, 201 & n.1 (D.C. Cir. 1981)). To prevail on its motion to strike, Gardner Denver "must show that the allegations it challenges can have no possible bearing upon the subject matter of the litigation and will be prejudicial to it." *Black*, 373 F. Supp. 2d at 904 (citing *Nwachu Kwu v. Karl*, 216 F.R.D. 176, 178 (D.D.C. 2003)).

While the defendants have convinced the court that the complaint does not state a claim for the impermissible disclosure of confidential information, they have failed to demonstrate that the allegations relating to that claim have no possible bearing on the subject matter of the litigation. The defendants also have failed to explain how leaving those allegations in the complaint would prejudice them.

32

The defendants also move to strike the barred damages allegations as "immaterial or impertinent." (*See* ECF No. 8 at 30.) But, again, the defendants have failed to explain how leaving those allegations in the complaint would prejudice them.

Accordingly, the defendants' motion to strike will be denied.

## B. Breach of the covenant of good faith and fair dealing

The complaint alleges that Air Pacific breached the implied covenant of good faith and fair dealing in at least four different ways: (1) its "intentional misrepresentations to Gardner Denver"; (2) "its . . . failure to provide 90 days' written notice of termination without cause"; (3) "its ongoing and active sale of Atlas Copco's competing products and parts throughout its geographical territory during the bargained-for 90-day termination notice period" and (4) "its disclosure to Atlas Copco of Gardner Denver's competitively sensitive and proprietary confidential business information." (ECF No. 1, ¶ 71.)

The defendants first argue that Gardner Denver's good faith and fair dealing claim fails to the extent it relies on Air Pacific's alleged breach of the Agreement. (*See* ECF No. 8 at 32-33.) The court has already determined that several of Gardner Denver's breach of contract claims survive the defendants' motion to dismiss. The good faith and fair dealing claim, therefore, is not subject to dismissal on this ground.

The defendants also argue that Gardner Denver's good faith and fair dealing claim fails to the extent it relies upon Air Pacific's termination of the Agreement. (*See* ECF No. 8 at 33-34.) According to the defendants, that Agreement permitted Air Pacific to

terminate it without cause and for any reason, including to go into business with one of Gardner Denver's competitors, and did not require Air Pacific to disclose to Gardner Denver its pending sale to Atlas Copco. The defendants further contend that Gardner Denver was not misled about that sale, as Gardner Denver admits in the complaint that it learned of the sale the same day Air Pacific submitted its termination letter.

Gardner Denver argues that its good faith and fair dealing claim is grounded not "in the *fact* of termination, but rather the manner of [Air Pacific's] exercise of that right." (ECF No. 15 at 29.) In other words, Gardner Denver contends that, while Air Pacific was free to terminate the Agreement without cause, it was not free to lie to Gardner Denver in the process of doing so.

"The implied covenant of good faith and fair dealing inheres in every contract and 'requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain.'" *Kuroda v. SPJS Holdings, LLC*, 971 A.2d 872, 888 (Del. Ch. 2009) (quoting *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005)). "The implied covenant cannot be invoked to override the express terms of the contract." *Kuroda*, 971 A.2d at 888 (citing *Dave Greytak Enters., Inc. v. Mazda Motors of Am., Inc.*, 622 A.2d 14, 23 (Del. Ch. 1992)). "Moreover, rather than constituting a free floating duty imposed on a contracting party, the implied covenant can only be used conservatively 'to ensure the

34

parties' reasonable expectations are fulfilled.'" *Kuroda*, 971 A.2d at 888 (quoting *Dunlap*, 878 A.2d at 442).

"Thus, to state a claim for breach of the implied covenant, [the plaintiff] 'must allege a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff.'" *Kuroda*, 971 A.2d at 888 (quoting *Fitzgerald v. Cantor*, No. 16297-NC, 1998 Del. Ch. LEXIS 212, at *4 (Del. Ch. Nov. 10, 1998)). "General allegations of bad faith conduct are not sufficient. Rather, the plaintiff must allege a specific implied contractual obligation and allege how the violation of that obligation denied the plaintiff the fruits of the contract." *Kuroda*, 971 A.2d at 888. "Consistent with its narrow purpose, the implied covenant is only rarely invoked successfully." *Id.* (citing *Superior Vision Servs., Inc. v. ReliaStar Life Ins. Co.*, No. 1668-N, 2006 Del. Ch. LEXIS 160, at *22 (Del. Ch. Aug. 25, 2006)).

Applying these principles, the court finds that Gardner Denver has sufficiently pled that Air Pacific breached the implied covenant of good faith and fair dealing. Gardner Denver alleges that Air Pacific engaged in fraud in attempting to exercise its discretionary right to termination by falsely claiming that it had "ceased all business operations" and was "liquidating" its assets as of October 17, 2019, and by intentionally concealing that its assets were being sold to one of Gardner Denver's biggest competitors. (*See* ECF No. 1, ¶ 43.) Under Delaware law, "'no fraud' is an implied contractual term" in

all contracts. *See ASB Allegiance Real Estate Fund v. Scion Breckenridge Managing Member, LLC,* 50 A.3d 434, 443 (Del. Ch. 2012).

Gardner Denver further alleges that its reliance on Air Pacific's misrepresentations and omissions denied Gardner Denver the fruits of the Agreement, as Gardner Denver did not timely pursue its rights under the Agreement to enjoin Air Pacific from impermissibly terminating the Agreement, to prevent Air Pacific from selling competitors' products during the 90-day termination notice period, and to prevent Air Pacific from disclosing Gardner Denver's confidential information. (*See* ECF No. 1, ¶ 44.) Whether Air Pacific's statements were in fact untrue or misleading is an issue left for another day. At this stage, Gardner Denver's allegations plausibly suggest an entitlement to relief on its good faith and fair dealing claim.

## C.    Fraud

The complaint also sets forth stand-alone fraud claims. Specifically, the complaint alleges that Air Pacific falsely claimed in its October 17, 2019 termination letter that it "had 'ceased all business operations,'" it "was 'liquidating' [its] assets," and it "had 'destroy[ed]' all of Gardner Denver's competitively sensitive and proprietary confidential business information as of October 17, 2019." (*See* ECF No. 1, ¶¶ 73-80.) The complaint further alleges that Air Pacific intentionally omitted that it was on the eve of being acquired by Atlas Copco, one of Gardner Denver's biggest competitors. (*See* ECF No. 1, ¶¶ 81-88.)

36

To state a claim for intentional misrepresentation under Delaware law, a plaintiff must allege "(1) deliberate concealment by the defendant of a material past or present fact, or silence in the face of a duty to speak; (2) that defendant acted with scienter; (3) an intent to induce plaintiff's reliance upon the concealment; (4) causation; (5) damages resulting from the concealment." *Pandora Jewelry, Inc. v. Stephen's Jewelers, LLC*, No. CPU4-10-005767, 2012 Del. C.P. LEXIS 86, at * (Del. Ct. Com. Pl. June 22, 2012) (citing *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149 (Del. 1987)). "Under Delaware law, fraudulent concealment has the same elements as intentional misrepresentation." *OC Tint Shop, Inc. v. CPFilms, Inc.*, No. 17-1677-RGA, 2018 U.S. Dist. LEXIS 166206, at *20 (D.D.C. Sept. 27, 2018) (citing *Davis v. First Horizon Home Loan Corp.*, No. CPU4-15-003818, 2016 Del. C.P. LEXIS 81, at *3-4 (Del. Ct. Com. Pl. Jan. 21, 2016)). "The majority of Delaware courts hold that an affirmative act is an essential element of fraudulent concealment." *OC Tint Shop*, 2018 U.S. Dist. LEXIS 166206, at *20 (quoting *Studiengesellschaft Kohle mbH v. Hercules, Inc.*, 748 F. Supp. 247, 253 (D. Del 1990)).

The defendants argue that the complaint fails to state a claim for intentional misrepresentation and fraudulent omission because Air Pacific's termination letter did not include any material misrepresentations or omissions. (*See* ECF No. 8 at 34-36.) According to the defendants, Gardner Denver's own allegations show that Air Pacific did in fact cease all business operations and was in the process of liquidating its assets as of October 2019. To support this argument, Air Pacific points to paragraph 28 of the

37

complaint, which indicates that Atlas Copco claimed in a press release that it had acquired the assets of Air Pacific on or around October 18, 2019. (*See* ECF No. 1, ¶ 28.)

The complaint alleges that Air Pacific continued to distribute "industrial air compressors and other flow control technology equipment and related parts throughout the State of California" after October 2019. (*See* ECF No. 1, ¶ 30.) The complaint further alleges that Accurate Air's director of sales sent a letter to its customers around March 23, 2020, proclaiming that Accurate Air and Air Pacific were "still very much **open for business**." (*Id.*, ¶ 45; ECF No. 1-1 at 31.) These allegations plausibly suggest that Air Pacific continued to operate, though now as a branch of Atlas Copco. In other words, Gardner Denver did not plead itself out of court on its intentional misrepresentation claim by alleging that Atlas Copco claimed in a press release to have acquired the assets of Air Pacific on or around October 18, 2019.

The defendants also contend that the termination letter did not misrepresent that Air Pacific had destroyed all of Gardner Denver's confidential information as of October 17, 2019. (*See* ECF No. 8 at 35.) Rather, according to the defendants, the termination letter indicated that Air Pacific "*will* . . . destroy all marketing materials and other confidential information," meaning at some time in the future (*Id.* (quoting ECF No. 1-1 at 29).) The motion to dismiss stage is not the time to interpret Air Pacific's termination letter. The complaint sufficiently alleges that the termination letter contained intentional misrepresentations.

38

Next, the defendants argue that Air Pacific did not conceal its sale to Atlas Copco and, even if it did, such concealment does not establish a claim to relief because Air Pacific did not have a duty to disclose this information to Gardner Denver. (*See* ECF No. 8 at 35-36.) The defendants point to two "facts" that "irrefutably prove[]" that the sale to Atlas Copco was not concealed. (*See id.* at 35; *see also* ECF No. 23 at 19.) First, an email sent by Accurate Air's director of sales on October 17, 2019, informed Gardner Denver that Lague and his family had "decided to sell all the assets of [Accurate Air] and [Air Pacific] to Atlas Copco." (*See* ECF No. 11-1.) This email, however, was not referred to in the complaint; thus, the court cannot consider the email in deciding the defendants' motion to dismiss. *See Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994) ("[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.").

Second, a letter sent on Atlas Copco letterhead by Accurate Air's director of sales indicated that "Accurate Air Engineering and its sister company [Air Pacific Compressors] were acquired by Atlas Copco on October 17, 2019." (*See* ECF No. 1-1 at 31.) This letter is referred to in the complaint (*see* ECF No. 1, ¶ 45) and attached to the complaint as an exhibit, so the court can consider it. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.") Nevertheless, the complaint alleges that the letter was sent on March 23, 2020—that is, more than five months *after* Air Pacific submitted its termination letter. The

39

March 23 letter therefore does not show that the acquisition was disclosed to Gardner Denver *at the time Air Pacific submitted its termination letter*.

The defendants have not cited any authority suggesting that the court is to determine at the pleading stage whether Air Pacific had a duty to disclose. The complaint alleges that the termination letter deliberately concealed the imminent sale to Atlas Copco in order to mislead Gardner Denver into believing that Air Pacific had permanently ceased operations. (*See* ECF No. 1, ¶¶ 43, 82-84.) This active concealment during the termination of a business relationship is sufficient to state a claim for fraudulent concealment, especially in light of the Air Pacific Agreement's prohibition on Air Pacific selling competitors' products during the term of the Agreement.

Finally, the defendants argue that Gardner Denver's reliance on the termination letter was not justifiable. (*See* ECF No. 8 at 35-36.) According to the defendants, the Air Pacific Agreement was terminable at will and did not impose a duty not to compete following its termination. The defendants further contend that the Agreement did not prohibit Air Pacific from selling its asset to a competitor.

"The question of whether one's reliance was reasonable generally is a question of fact. . . . The reasonableness of one's reliance on false information depends on all of the circumstances." *TrueBlue, Inc. v. Leeds Equity Partners IV, LP*, No. N14C-12-113 WCC CCLD, 2015 Del. Super. LEXIS 524, at *22 (Del Super. Ct. Sept. 25, 2015) (quoting *Vague v. Bank One Corp.*, No. 511, 2003, 2004 Del. LEXIS 221, at *3 (Del. May 20, 2004)). "As such,

40

whether a party's reliance was reasonable is not generally suitable for resolution on a motion to dismiss." *TrueBlue, Inc.*, 2015 Del. Super. LEXIS 524, at *22 (citing *Iacono v. Barici*, No. 06C-02-021-RFS, 2006 Del. Super. LEXIS 531, at *9-10 (Del. Super. Ct. Dec. 29, 2006)).

The complaint alleges that Gardner Denver justifiably relied on the material misrepresentations and omissions contained in the Air Pacific's termination letter

> by, among other things, not pursuing its rights and remedies at law to immediately enjoin the improper termination of the [Air Pacific Agreement] to: (a) ensure Gardner Denver could locate a replacement distributor to service the relevant counties in California upon termination of the agreements; (b) prevent the [Air Pacific] from disclosing Gardner Denver's competitively sensitive and proprietary confidential business information; and (c) prevent the [Air Pacific] from unfairly and unlawfully utilizing Gardner Denver's competitively sensitive and proprietary confidential business information to market and sell Atlas Copco's products and parts to Gardner Denver's customers and installed base.

(*See* ECF No. 1, ¶ 77, 85.) The court cannot say that this reliance was unreasonable as a matter of law. Accordingly, the complaint sufficiently states claims for fraudulent misrepresentation and fraudulent concealment under Delaware law.

### D.     Attorney fees

The last cause of action in the complaint is a claim for attorney fees pursuant to § 3.01 of the Agreement, which states, in relevant part, as follows:

> Distributor, on its own behalf and on behalf of its parent companies, affiliates, subsidiaries, divisions and agents, will indemnify, defend and hold Company . . . harmless from and against any loss, claim, damage, expense, liability and cost of any kind (without regard to whether the claim is brought or any loss is incurred by a third party or by Company and

including but not limited to reasonable attorneys' fees which shall be deemed to include attorneys' fees incurred in connection with enforcing this provision) ("**Damages**") caused by, resulting from, or otherwise arising as a result of: (a) any breach of this Agreement by Distributor or any party acting on its behalf; or (b) any act or omission of Distributor or any party acting on its behalf.

(*See* ECF No. 1, ¶¶ 89-91; ECF No. 1-1 at 16.)

The defendants argue that this claim should be dismissed because Gardner Denver has failed to properly plead each element of a breach of contract claim: (1) the existence of a contract; (2) breach of an obligation imposed by the contract; and (3) damages. (*See* ECF No. 8 at 37.) The court disagrees. The attorney fee claim expressly incorporates the complaint's other allegations. (*See* ECF No. 1, ¶ 89.) Those allegations assert that Gardener Denver suffered damages as a result of Air Pacific's breach of the Air Pacific Agreement. The attorney fee claims also alleges that the Air Pacific Agreement contains a fee-shifting provision. (*See id.*, ¶ 90.) Together, these allegations are sufficient to state a claim for attorney fees.

## V. Motion for oral argument

Gardner Denver moves for oral argument "to the extent the court is inclined to entertain Defendants['] arguments," given the "complexity, along with the numerous procedural bases for Defendants' motions," and to "address any questions" about "the circumstances under which Gardner Denver's lawsuit was withdrawn from California Superior Court." (*See* ECF No. 18.) The court respectfully will deny Gardner Denver's motion. For one, Gardner Denver's motivations for dismissing the California state action

did not play any role in the court's analysis—indeed, the court has denied the defendants'

motion to transfer venue. Moreover, while the issues raised in the defendants' motions

are complex and numerous, the parties' thorough briefing sufficiently addressed them

such that further clarification is not necessary.

## CONCLUSION

**IT IS THEREFORE ORDERED** that the defendants' motion to dismiss all claims

against Accurate Air Engineering, Inc., and John Lague for lack of personal jurisdiction

(ECF No. 7) is **GRANTED**; the defendants' motion to dismiss for failure to join an

indispensable party (ECF No. 7) is **DENIED**; the defendants' motion to transfer venue

(ECF No. 9) is **DENIED**; the defendants' motion to dismiss for failure to state a claim

(ECF No. 7) is **GRANTED in part** and **DENIED in part**; and the plaintiff's motion

requesting oral argument (ECF No. 18) is **DENIED**.

Dated at Milwaukee, Wisconsin this 1st day of March, 2021.

WILLIAM E. DUFFIN
U.S. Magistrate Judge