UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**GARDNER DENVER, INC.,**

        **Plaintiff,**

v.                                              **Case No. 20-CV-895**

**AIR PACIFIC COMPRESSORS, INC.,**

        **Defendant.**

## ORDER

Defendant Air Pacific Compressors, Inc. has filed a renewed motion for transfer of venue pursuant to 28 U.S.C. § 1404(a). (ECF No. 104.) The motion is fully briefed and ready for resolution.

On March 1, 2021, this court denied Air Pacific's original motion to transfer this action to the Central District of California pursuant to § 1404(a). (ECF No. 32 at 21-25.) Because Air Pacific and Gardner Denver are parties to a contract with a binding forum selection clause specifying that "[a]ny legal action or proceeding arising out of or relating to this Agreement must be brought in the courts of the Eastern District of Wisconsin, sitting in Milwaukee, Wisconsin" (ECF No. 1-1 at 17), the court's § 1404(a) analysis was

guided by the Supreme Court's decision in *Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas*, 571 U.S. 49 (2013).

*Atlantic Marine* provides that the § 1404(a) "calculus changes … when the parties' contract contains a valid forum-selection clause." 571 U.S. at 63. In that situation, the court "must deem the private-interest factors to weigh entirely in favor of the preselected forum … [and] may consider arguments about public-interest factors only." *Id.* at 64. The public interest factors, however, "rarely" outweigh the parties' private interests in enforcing a forum selection clause. *Id.* at 64. Thus, "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Id.* at 63 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)).

Finding that Air Pacific failed to demonstrate that the public interest factors overwhelmingly favored transfer of the action to the Central District of California, this court denied Air Pacific's original motion to transfer. (ECF No. 32 at 25.)

In its original motion, Air Pacific argued that keeping Gardner Denver's claims against Air Pacific before this court while requiring Gardner Denver's claims against Accurate Air and Lague go forward in California[1] would waste judicial resources and

---

[1] In the same Order which denied Air Pacific's original motion to transfer, this court granted the defendants' motion to dismiss all claims against Air Pacific's sister company, Accurate Air Engineering, Inc., and their majority shareholder, John Lague, for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). (ECF No. 32 at 19.)

result in duplicative litigation. (ECF Nos. 10 at 15-17; 22 at 10-13.) The court explained that Air Pacific's concerns were "overstated" for two reasons:

> First, while possible, it is not certain that denying the defendants' motion to transfer would result in two separate lawsuits, one here and the other in California. If the motion to transfer is denied, Gardner Denver may choose to file a new lawsuit against Accurate Air and Lague in California while it continues to litigate its claims against Air Pacific here. But Gardner Denver could also choose to go forward only with its claims against Air Pacific. Or Gardner Denver could dismiss this action and file a new one against all three defendants in California, like it did initially. Either way, it would be Gardner Denver's decision to make.
>
> Second, even if there were two lawsuits, steps could be taken to mitigate the defendants' concerns. For example, the parties could agree to hold one of the cases in abeyance until the other is decided. Or they could carefully manage discovery to eliminate judicial inefficiency.

(ECF No. 32 at 24.)

Approximately four months after the court denied Air Pacific's original motion to transfer, Gardner Denver filed a complaint in the Central District of California against Accurate Air and Lague. (ECF No. 105-1.) The California Complaint also names as defendants Atlas Copco Compressors, LLC and Atlas Copco North America, LLC (collectively, "Atlas Copco"). (ECF No. 105-1 at 2-3.) Air Pacific argues that Gardner Denver's new, "nearly identical lawsuit" has caused the motion to transfer "analysis [to] shift[] significantly." (ECF No. 105 at 8.)

Specifically, Air Pacific argues that the modified § 1404(a) framework set forth in *Atlantic Marine* is no longer the proper framework for analyzing this motion to transfer. It argues that the California action involves "all of the other parties to the same

transaction at issue in this case," none of which is subject to a forum selection clause. (ECF No. 105 at 8.) *Atlantic Marine* concerned a § 1404(a) motion to transfer venue where all of the parties were subject to a contractual forum selection provision but "left unaddressed … the proper analysis in a multi-party case, where only *some* of the parties are subject to a forum-selection provision." (ECF No. 105 at 10 (citing *Atl. Marine*, 571 U.S. at 62-63).)

Air Pacific points out that the Third and Fifth Circuits have had occasion to consider how *Atlantic Marine*'s framework ought to be applied where "some, but not all, of the parties are subject to a forum-selection provision." (ECF No. 105 at 10-11 (citing *In re Rolls Royce Corp.*, 775 F.3d 671, 679 (5th Cir. 2014), and *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 403-04 (3d Cir. 2017)).) And, says Air Pacific, "[a]lthough the Seventh Circuit has not yet weighed in on this issue, the decisions of several of its districts reflect the application of principles similar to those addressed" by the Third and Fifth Circuits. (ECF No. 105 at 11-12 (citing *Ashley Furniture Indus. v. Packaging Corp. of Am.*, 275 F. Supp. 3d 957, 964 (W.D. Wis. 2017), *Meyer v. Newmary Corp.*, No. 19-cv-755, 2020 WL 3256263 (N.D. Ind. June 16, 2020), and *Simpson v. Thor Motor Coach*, 19-cv-33, 2019 WL 2206092, at *7-8 (N.D. Ind. May 22, 2019)).) Air Pacific argues that the § 1404(a) framework from those cases—which, among other things, instructs the court to consider the private interests of the parties who are not privy to an agreement with a forum selection clause—is the proper framework for analyzing its renewed motion to transfer.

In response, Gardner Denver argues that *Atlantic Marine* still controls and the § 1404(a) analysis under its framework remains unchanged. Although Gardner Denver has filed another lawsuit in the Central District of California against parties not privy to a contract with a forum selection clause, none of those parties are defendants in this lawsuit; here, Gardner Denver remains the lone plaintiff and Air Pacific the lone defendant. "While [Air Pacific] is correct that the private interests of the parties that did not sign an agreement containing a forum selection clause can be considered in the context of a motion to transfer, there are no such parties in this case." (ECF No. 110 at 7.) Because the facts as applied to this lawsuit have not changed, the court's modified § 1404(a) analysis also remains unchanged. As such, Gardner Denver argues, the *Atlantic Marine* framework still governs and this court should deny Air Pacific's renewed motion to transfer for the same reasons it denied its first one.

As was the case with Air Pacific's last motion to transfer, the only two parties to this lawsuit are Gardner Denver and Air Pacific, and both are a party to a contract with a forum selection clause specifying that "[a]ny legal action or proceeding arising out of or relating to this Agreement must be brought in the courts of the Eastern District of Wisconsin, sitting in Milwaukee, Wisconsin." (ECF No. 1-1 at 17.) Since Air Pacific's last motion to transfer to the Central District of California, Gardner Denver "has filed a nearly identical lawsuit [there] against all of the parties to the same transaction at issue—none of whom are subject to a forum-selection clause." (ECF No. 105 at 8.) However, no new

5

parties have been added as defendants to this lawsuit. That fact alone distinguishes this case from those in which the Third and Fifth Circuits tweaked the *Atlantic Marine* framework to account for the parties who were not bound by a forum selection clause. *See Rolls Royce*, 775 F.3d at 679; *Howmedica*, 867 F.3d at 403-04.

It also renders the § 1404(a) analysis framework from those cases ill-fitted for this case. *See, e.g.*, *Rolls Royce*, 775 F.3d at 679 (describing its framework as the "severance-and-transfer inquiry" where the final step requires the district court to "consider whether there are procedural mechanisms that can reduce the cost of severance"); *Howmedica*, 867 F.3d at 408-09 (prescribing as a fourth step consideration of whether the severance of certain parties or claims may affect jurisdiction, venue, or joinder). As such, Air Pacific provides no compelling reason for this court to depart from *Atlantic Marine*'s § 1404(a) framework.

Having said that, *Atlantic Marine* requires analysis of the public interest factors, and Gardner Denver's filing of a new, largely duplicative lawsuit in the Central District of California, and its inclusion of Atlas Copco in that lawsuit, has altered that analysis.

As was the case on the first motion to transfer venue, given the presence of a forum selection clause, Air Pacific "bear[s] the burden of showing that public-interest factors overwhelmingly []favor a transfer." *Atl. Marine*, 571 U.S. at 66. The public interest factors, which "relate[] to the efficient administration of the court system" *Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010), include "docket

6

congestion and likely speed to trial in the transferor and potential transferee forums, each court's relative familiarity with the relevant law, the respective desirability of resolving controversies in each locale, and the relationship of each community to the controversy." *In re Ryze Claims Sols., LLC*, 968 F.3d 701, 708 (7th Cir. 2020) (quoting *Rsch. Automation*, 626 F.3d at 978 (internal quotation marks omitted)). "These considerations, however, will 'rarely' outweigh the parties' private interests in enforcing a forum-selection provision." *Id.* (quoting *Atl. Marine*, 571 U.S. at 64). As such, "the practical result is that forum-selection clauses [] control except in unusual cases." *Atl. Marine*, 571 U.S. at 574.

In its original motion to transfer Air Pacific did not argue that the Central District of California was the better forum based on docket congestion or likely speed to trial (ECF No. 10 at 13-16), and it does not so contend now (ECF No. 105 at 20-21). Gardner Denver points out that, because the "Wisconsin case is much further along, it will almost certainly come to trial well before the case in California, where discovery has barely begun." (ECF No. 110 at 9.) The court agrees with Gardner Denver that this factor weighs against transfer.

Air Pacific also does not raise new arguments for the second public interest factor—each court's familiarity with the relevant law. (ECF Nos. 10 at 14-15; 105 at 20-21.) Thus, the court's conclusion on Air Pacific's previous motion to transfer that "the second public-interest factor also does not weigh in favor of transfer" (ECF No. 32 at 23-24) holds true for Air Pacific's renewed motion to transfer.

The court agreed with Air Pacific on the previous motion to transfer that California has a greater interest in this dispute than Wisconsin. (ECF No. 32 at 25.) The facts behind that conclusion remain true now:

> The defendants all are California residents with no meaningful ties to Wisconsin, and the agreements at issue here involved the distribution of Gardner Denver products in specific Southern California counties. The only connection to Wisconsin is that Gardner Denver moved its headquarters to Wisconsin several years after entering into its agreement with Accurate Air but prior to going into business with Air Pacific. However, the activity underlying Gardner Denver's claims did not occur in Wisconsin.

(ECF No. 32 at 25.) Therefore, the fourth public interest factor continues to heavily weigh in favor of transfer to the Central District of California.

The question for the present motion is whether the third public interest factor (which requires the court to consider the respective desirability of resolving this dispute in each locale) requires a different outcome from that reached on Air Pacific's first motion. Specifically, the court must consider whether the public interest in conserving judicial resources is best promoted by keeping Gardner Denver's lawsuit in this court or transferring it to the Central District of California. Air Pacific argues that, because Gardner Denver's new lawsuit in the Central District of California is nearly identical to its lawsuit here, and consolidation of the two lawsuits is possible only in the Central District of California, transfer to that court prevents the "wastefulness of time, energy, and money that § 1404(a) was designed to prevent." (ECF No. 105 at 19 (quoting *Continental Grain Co. v. The Barge FBL-585*, 364 U.S. 19, 26 (1960)).) Air Pacific also points

out that, if this case is not transferred, because the two lawsuits "involve the very same factual and legal issues," there is a risk of "prejudice (and havoc) caused by conflicting findings of fact and conclusions of law." (ECF Nos. 105 at 19-20; 117 at 6-8.)

In response, Gardner Denver argues that this court previously addressed Air Pacific's concerns relating to duplicative litigation and wasted judicial resources when it denied Air Pacific's initial motion to transfer. (ECF No. 110 at 16 (citing ECF No. 32 at 24-25).) Gardner Denver points out that the court concluded that duplicative litigation concerns "only slightly weigh[ed] in favor of transfer" because any associated inefficiencies could be mitigated by the parties themselves. (ECF No. 110 at 16 (citing ECF No. 32 at 24-25).)

Gardner Denver's new lawsuit in the Central District of California is virtually identical to its lawsuit here, but with two differences. First, in this action Gardner Denver makes allegations against Air Pacific, while in the California lawsuit it makes parallel allegations against Accurate Air (ECF Nos. 84-1 at ¶¶ 11-74; 105-1 at ¶¶ 16-84), which Gardner Denver claims is Air Pacific's sister company (ECF Nos. 84-1 at ¶ 1; 105-1 at ¶ 1), both of whom are controlled by John Lague (ECF Nos. 84-1 at ¶ 13, 33-35; 105-1 at ¶ 9, 18, 38-40). The allegations against Air Pacific and Accurate Air are nearly word-for-word identical, which is not surprising given that Gardner Denver's separate agreements with the companies are similar (ECF Nos. 84-1 at ¶¶ 14-21, 28-30; 105-1 at ¶¶ 19-26, 33-35), and Gardner Denver's claims against both companies arise out of a single transaction where

9
Case 2:20-cv-00895-WED   Filed 10/18/22   Page 9 of 15   Document 120

the two companies, through Lague, sold their assets to Atlas Copco (ECF Nos. 84-1 at ¶ 32-56; 105-1 at ¶¶ 37-64).

Second, the California lawsuit names Atlas Copco as a defendant and raises three claims against it. (ECF No 105-1 at ¶¶ 195-216.) But, apart from the addition of several paragraphs to the California complaint directed at Atlas Copco, the addition of Atlas Copco does little to vary the content of the two complaints. (ECF Nos. 84-1 at ¶¶ 11-74; 105-1 at ¶¶ 16-84.)

In short, the two lawsuits are based on duplicative allegations arising out of the same nucleus of operative facts and involve nearly identical claims. But because they are in different district courts, two courts will decide many of the same questions of law and fact, which poses a threat of conflicting findings. And although Gardner Denver's lawsuits could proceed simultaneously, doing so would result in a waste of judicial resources and contravene the principles underlying § 1404(a). *Continental Grain*, 364 U.S. at 26 ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404 was designed to prevent.").

Where feasible, consolidation of two nearly identical lawsuits promotes judicial efficiency and eliminates the threat of conflicting findings of fact and conclusions of law. For these reasons, courts in the Seventh Circuit favor transfer where related lawsuits can be consolidated in a single forum. *See, e.g.*, *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 221

(7th Cir. 1986) ("[R]elated litigation should be transferred to a forum where consolidation is feasible."); *Convergen Energy WI, LLC v. L'Anse Warden Elec. Co. LLC*, No. 20-cv-543, 2020 WL 3833075, at *4 (W.D. Wis. July 8, 2020) ("[C]ourts have found that trying related cases together is an important and sometimes decisive factor in a motion to transfer."). Because this court has already determined that it lacks personal jurisdiction over Accurate Air and Lague, consolidation here is not possible. (ECF No. 32 at 19.) Gardner Denver does not dispute that consolidation of the two lawsuits is possible in the Central District of California. (ECF No. 110.) And while it dismisses Air Pacific's claim that the two lawsuits are identical as "wrong," it notes only three differences: that it has different agreements with Air Pacific and Accurate Air, that Lague signed the Air Pacific agreement "solely as a corporate officer," and that its agreement with Accurate Air has a provision choosing a different state law. (ECF No. 110 at 9.)

In resolving Air Pacific's last motion to transfer, the court described as "overstated" Air Pacific's concerns about the potential for wasted judicial resources stemming from duplicative litigation. The court reasoned that, if Gardner Denver decided to file a second lawsuit against Accurate Air and Lague in California, and there was no guarantee it would, steps short of transferring this case could be taken to mitigate the potential for wasted judicial resources. (ECF No. 32 at 25.) As examples, the court suggested that the parties "could agree to hold one of the cases in abeyance until the other is decided" or they "could carefully manage discovery to eliminate judicial inefficiency."

(ECF No. 32 at 25.) Because Gardner Denver's new lawsuit in California not only names Accurate Air and Lague as defendants, but Atlas Copco as well, neither suggestion is presently an effective solution to judicial inefficiency.

To begin with, given the lack of cooperation between the parties since the court issued its order on Air Pacific's last motion to transfer, it is unlikely that they would agree to hold the California lawsuit in abeyance pending this lawsuit's resolution. And Gardner Denver's decision to name Atlas Copco as a defendant in the California lawsuit all but forecloses the possibility of cooperation on that front—the defendants theorize that Gardner Denver intends to "gain[] a tactical advantage by fighting A[ir Pacific] alone in this Court first, without the presence of G[ardner Denver]'s multi-billion-dollar rival, Atlas Copco," with the hope "to leverage this imbalance to procure favorable rulings here that it will then use in the CD Cal Action against" Accurate Air, Lague, and Atlas Copco. (ECF Nos. 117 at 8; 111 at 6; 115 at 10.) Given this belief, it appears unlikely that the defendants would stipulate to holding the California lawsuit in abeyance pending resolution of this lawsuit.

And while Gardner Denver could move the California court to hold the California lawsuit in abeyance pending resolution of this lawsuit, there is no guarantee that the court would grant such a motion, especially given the defendants' allegation of gamesmanship on Gardner Denver's part. On the other hand, pausing proceedings here pending the

resolution of the California lawsuit would make little sense given that Gardner Denver filed this lawsuit two years before filing the California lawsuit.

Moreover, when the court suggested that the parties could mitigate judicial inefficiency stemming from two related lawsuits by carefully managing discovery through cooperation, the court did not anticipate that Gardner Denver would also name Atlas Copco as a defendant. Nor did it anticipate how Atlas Copco's presence as a defendant in a new California lawsuit would affect the parties' ability to carefully manage discovery to eliminate judicial inefficiency here.

Although Atlas Copco is a defendant in the California lawsuit but not here, the Wisconsin and California complaints make nearly identical allegations about Atlas Copco. For example, Gardner Denver alleges in its Amended Complaint that, as part of the integration process following Atlas Copco's asset purchase of Air Pacific, Air Pacific employees conspired with Atlas Copco employees to convert customers from Gardner Denver products to Atlas Copco products. (ECF No. 84-1 at ¶ 41.) Gardner Denver alleges that Air Pacific disclosed Gardner Denver's confidential information "to Atlas Copco to assist Atlas Copco in identifying the highest value Gardner Denver customer relationships to target for conversion." (ECF No. 84-1 at ¶ 42.) Apart from substituting Air Pacific with Accurate Air, Gardner Denver's complaint in the California lawsuit contains identical allegations. (ECF No. 105-1 at ¶¶ 48-49.)

To avoid duplication of discovery efforts, Gardner Denver has proposed that its depositions of Atlas Copco employees be taken on a single day for use in both lawsuits. (ECF No. 116-5 at 2.) In the Joint Rule 26(f) Report filed in the California lawsuit, Gardner Denver anticipated completing its depositions of Atlas Copco employees by February 1, 2023. (ECF No. 116-7 at 14-15.) While recognizing that this case has been pending for over two years and the value in avoiding duplicative discovery, Atlas Copco strongly opposes Gardner Denver's proposal: "Compelling Atlas Copco to now participate in Wisconsin depositions without the same benefit of more than two years' worth of work and discovery will limit Atlas Copco's defense strategy in the California Action and is unfairly prejudicial given Atlas Copco's limited involvement as a third party in this case." (ECF No. 115 at 3.) Atlas Copco is therefore taking preemptive measures (it has moved for a protective order and to quash subpoenas) to resist any future attempts by Gardner Denver to secure depositions of Atlas Copco employees for this lawsuit. (ECF No. 115.) As such, while carefully managing discovery is no longer a practical solution to judicial inefficiency, transferring the lawsuit for potential consolidation in the Central District of California is.

In sum, the third public interest factor no longer "only slightly weighs in favor of transfer." It does so overwhelmingly. When combined with California's significant—and Wisconsin's near-complete lack of—connection to this lawsuit, this lawsuit has become the "unusual case" in which the efficient administration of the court system outweighs

14
Case 2:20-cv-00895-WED    Filed 10/18/22    Page 14 of 15    Document 120

the parties' private interests in enforcing the forum selection provision. Air Pacific has met its burden of showing that the public interest factors overwhelmingly favor transfer of this lawsuit to the Central District of California. Air Pacific's renewed motion for transfer of venue pursuant to 28 U.S.C. § 1404(a) (ECF No. 104) is granted.

IT IS SO ORDERED.

Dated at Milwaukee, Wisconsin this 18th day of October, 2022.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge

15
Case 2:20-cv-00895-WED   Filed 10/18/22   Page 15 of 15   Document 120